IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARTFORD INSURANCE COMPANY OF THE SOUTHEAST,<br><br>    Plaintiff,<br><br>            v.<br><br>JOHN J. AND LORRAINE STEAD and JENNIFER L. STEAD,<br><br>    Defendants. | No. 3:12-cv-0094<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is Plaintiff Hartford Insurance's Emergency Motion for Stay of Arbitration.  (Doc. 2).  In its Motion, Hartford seeks declaratory relief barring issues of coverage at an Underinsured Motorist Arbitration scheduled for the morning of January 30, 2012 with Defendant Jennifer Stead.  Having previously consented to the arbitration, Plaintiff also seeks to have its arbitration agreement rescinded and/or have the arbitration stayed until the Court can issue such relief pursuant to the Declaratory Judgment Act.  28 U.S.C. § 2201, *et seq*.  In particular, Plaintiff is concerned that the arbiters will erroneously decide coverage issues at their upcoming arbitration hearing, and that Hartford will be left with no ability to appeal this determination.  Defendants argue that, pursuant to the Declaratory Judgment Act, the Court should decline jurisdiction over this state law matter.  The Court agrees, and for the reasons below, will dismiss the action for lack of jurisdiction.

## BACKGROUND

Plaintiff Hartford Insurance Company of the Southeast filed its Complaint for Declaratory Judgment and for Stay of Arbitration on January 17, 2012.  (Doc. 1).  This action

sounds in diversity jurisdiction pursuant to 28 U.S.C. § 1332 as Hartford is a Connecticut Corporation with a principal place of business in Hartford, Connecticut, all Defendants are residents of the State of Pennsylvania, and the amount in controversy, exclusive of interest and costs, is alleged to exceed $75,000.

In its Complaint, Hartford alleges the following. At all relevant times, Defendants John J. and Lorraine Stead maintained an auto insurance policy with Hartford which provided $100,000 per person and $300,000 per accident of non-stacked underinsured motorist ("UIM") coverage for bodily injury. Defendant Jennifer Stead, the policyholders' daughter, who was covered by the policy, was injured in a motor vehicle accident in Wayne County, Pennsylvania on October 28, 2007. After settling her claim with the underinsured motorist, Jennifer made a claim for UIM benefits under her parent's policy with Hartford. Pursuant to the policy, Jennifer's attorney requested arbitration as to this UIM claim, and Hartford agreed.

Under the terms of the policy, arbitration as to UIM benefits is limited solely to: (a) "[w]hether that insured is legally entitled to recover damages"; and (b) "the amount of damages which are recoverable by that insured." (Compl. at ¶ 16, Doc. 1). The policy is explicit that "disputes concerning coverage under this endorsement may not be arbitrated." (*Id.*).

In a November 15, 2011 letter, Jennifer's attorney informed Hartford that Jennifer was actually entitled to $400,000 in benefits under the UIM policy as the Defendants had not properly rejected stacking under the pertinent statutory requirements. Pennsylvania law provides that a stacking waiver "must be signed by the first named insured and dated to be valid." 75 Pa. Cons. Stat. § 1738(e). While John Stead did not date his waiver form,

2

Hartford added a date and time stamp to the signed form.  This is sufficient under Section 1738 as the waiver needs to be signed by the insured, but can be dated by whomever.

However, this issue–whether stacking applies or not–is an issue concerning coverage. While such a coverage issue is explicitly precluded from arbitration per the aforementioned terms of the policy, Jennifer's attorney intends to raise the issue at arbitration anyway. Problematically, if the arbitrators accept Defendant's position and allow stacking, Hartford may be denied any review of the arbiters' erroneous determination.  Therefore, in its Complaint, Hartford requests that the Court: (1) void and rescind its agreement to arbitrate; (2) stay the arbitration until the Court can rule that the arbiters cannot make a determination on stacking; and (3) declare that John Stead executed a valid rejection of policy stacking. Before me today is Hartford's Emergency Motion for Stay of Arbitration.  (Doc. 2).  This Motion has been fully briefed and is ripe for my review.

**I. Jurisdiction of the Court over this Action as to Declaratory Relief**

Defendants first argue that the Court should exercise its discretion and decline jurisdiction over this matter as it is a declaratory judgment action concerning only state law. Plaintiff argues that such restraint is inappropriate in the absence of a parallel state court action and points out that this is both an action for declaratory and injunctive relief, and as such a "mixed" action, jurisdiction is proper.

Of course, district courts generally have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  This rule, however, does not apply to declaratory judgment actions.  "The Declaratory Judgment Act does not mandate that federal district courts exercise jurisdiction over every declaratory judgment action." *Allstate Ins. Co. v. Seelye*, 198

F. Supp. 2d 629, 630-31 (W.D. Pa. 2002). In pertinent part, the Declaratory Judgment Act states that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).

Both parties, in support of their positions, cite *Wilton v. Seven Falls Company*, which held that a district court has the discretion to stay a declaratory judgement action in the face of parallel state court proceedings. 515 U.S. 277, 290 (1995). While *Wilton* expressly reserved judgment on "cases in which there are no parallel state court proceedings," *Id.*, it also held that "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.* at 288. This determination was founded on Congress's intent to "place a remedial arrow in the district court's quiver" and create "an opportunity, rather than a duty." *Id.*

The Third Circuit has framed the crucial question in this analysis as "whether the controversy may 'better be settled' in the state court . . . ." *Atl. Mut. Ins. Co. v. Gula*, 84 Fed. Appx. 173, 174 (3d Cir. 2003) (citing *United States v. Pennsylvania, Dep't of Envtl. Resources*, 923 F.2d 1071, 1075 (3d Cir. 1991)). To further guide the analysis, the Third Circuit has provided three factors to consider when a district court is deciding to entertain a declaratory judgment action "involving insurance coverage issues." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000). These are:

4

> 1. A general policy of restraint when the same issues are pending in a state court;
>
> 2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;
>
> 3. Avoidance of duplicative litigation.

*Id.* (citing *United States v. Pennsylvania, Dep't of Envtl. Resources*, 923 F.2d 1071, 1075-76 (3d Cir. 1991).  The Third Circuit also noted that exercising jurisdiction over a declaratory judgment matter may also be inappropriate where "the state law is close or unsettled," as a district court should be mindful that they are not creating, but predicting state law.  *Id.* at 135 (citations omitted).  Conversely, *Summy* also determined that where state law is "firmly established" federal jurisdiction would be similarly inappropriate as there "would seem to be even less reason for the parties to resort to the federal courts."  *Id.* at 136.

Instead, jurisdiction over a declaratory action is warranted where a district court is faced with "federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding."  *Id.* at 134.  Applying these considerations, *Summy* reversed a district court that had granted a declaratory judgment on a coverage issue where there was a analogue pending at the state court level. While the Third Circuit determined that exercising jurisdiction would work a needless interference with the state court litigation, it also gleaned no federal interest that was advanced through the exercise of federal jurisdiction.  *Id.* at 135-36.  Pertinent to the matter *sub judice*, *Summy* found in particular that "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum."  *Id.* at 136.

Subsequent cases within this Circuit have read *Wilton* and *Summy* as endowing district courts with the discretion to deny jurisdiction over declaratory judgment actions concerning solely state law issues even where there is no state action pending.  In *Nationwide Mutual Insurance Company v. Yungwirth*, an insurer in a diversity action sought a declaratory judgment that its insured could not maintain a claim for an accident on an all terrain vehicle.  Civ. Act. No. 04-1681, 2005 WL 3070907 (W.D. Pa. Nov. 15, 2005).  Finding no federal issues or interests at stake, and that a state court would be well-suited to resolve the dispute, that court exercised its discretion to *sua sponte* dismiss the plaintiff's declaratory judgment action.  *Id.* at *2-3.  Even though there was no pending parallel state action to contend with, *Yungwirth* determined that this was only one factor in the calculus to decline jurisdiction.  *Id.* at *2.  In the view of that court, "the absence of a parallel state proceeding [was] clearly outweighed by the lack of any federal interest in [the] dispute."  *Id.*

*Allstate Insurance Co. v. Seelye* arrived at the very same conclusion as *Yungwirth*.  198 F. Supp. 2d 629 at 629 (W.D. Pa. 2002).  In a set of facts very similar to the instant case, the insurer in *Seelye* initiated a declaratory judgment action seeking a declaration that its insureds could not stack their UIM benefits and that this question could not be submitted to binding arbitration.  *Id.* at 630.  From these facts, that court noted that the action represented an "all too common case of an insurance company coming to federal court, under diversity jurisdiction, to receive declarations on purely state law matters."  *Id.* at 631.  Thus, on its own motion, it dismissed the action even though there was no parallel state court proceeding, finding that this consideration was "clearly outweighed by the lack of any federal interest in the dispute."  *Id.* at 632; *see also Maxum Indemnity Co. v. Heyl & Patterson, Inc.*, Civ. Act. No. 2:11-01111, 2011 WL 4048377 at *2 (W.D. Pa. Sept. 12, 2011)

(declining to exercise diversity jurisdiction over state law questions of coverage pertaining to a pending arbitration hearing, finding the absence of a state court proceeding was "clearly outweighed by the lack of any federal interest in [the] dispute."); *Brethren Mut. Ins. Co. v. Hoffman*, Civ. Act. No. 3:07-cv-1817, 2008 U.S. Dist. LEXIS 109289 (M.D. Pa. Aug. 20, 2008) (declining such jurisdiction where there was no federal interest in determining whether UIM coverage could be stacked and there was a pending "court-sponsored" arbitration hearing).

Hartford's matter before this Court does not raise a single federal issue. Namely, there are none of the considerations *Summy* articulated such as "federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding." 234 F.3d at 134. Instead, it is solely a question regarding insurance coverage which, as Hartford admits, involves "no unsettled areas of state law." (Pl.'s Reply Br. at 6, Doc. 9). Thus, as above, the instant matter is purely a state one, and the fact that there is no parallel state proceeding is "clearly outweighed by the lack of any federal interest in this dispute." *Seelye*, 198 F. Supp. 2d at 629. Therefore, if this were simply an action for declaratory relief, the Court would exercise its discretion and decline jurisdiction. However, as the Plaintiff points out, this action is a "mixed claim" seeking not pure declaratory relief, but also injunctive relief, a complication which requires independent analysis.

**II. The Inclusion of Injunctive Relief in Plaintiff's Complaint**

As stated, this matter is a "mixed claim" in that Plaintiffs are seeking both injunctive and declaratory relief. Unfortunately, the exercise of jurisdiction in such a matter has not been addressed by the Third Circuit or the Supreme Court. *Perelman v. Perelman*, 688 F.

7

Supp. 2d 367, 374 (E.D. Pa. 2010). "There is no resounding majority view, and no simple compromise between the duty to exercise jurisdiction over coercive claims, and the discretion to exercise jurisdiction over declaratory claims." *Columbia Gas v. Am. Int'l Group*, 2011 U.S. Dist. LEXIS 7919 (W.D. Pa. Jan. 27, 2011). Moreover, the Circuits that have considered the matter are "sharply divided." *Perelman*, 688 F. Supp. 2d at 374.

A litany of approaches on this issue has emerged. One approach, adopted by the Fifth and Second Circuits, is to exercise jurisdiction over both the injunctive and coercive[1] claims so long as the injunctive relief sought is not frivolous. *Id.* Similarly, the Fourth Circuit will exercise jurisdiction over the coercive claim, but will analyze the declaratory claim separately to determine whether jurisdiction is appropriate, which it ordinarily is. *Id.* The Seventh and Ninth Circuits consider whether the coercive claim is independent–that is, sufficient to invoke subject matter jurisdiction on its own–and those courts will then usually exercise jurisdiction over both the declaratory and coercive claims. *Id.* at 376.

The Eighth Circuit has adopted an approach that considers the "essence of the suit," allowing a court to decline jurisdiction "so long as the further necessary or proper relief would be based on the court's decree so that the essence of the suit remains a declaratory judgment action." *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 793-94 (8th Cir. 2008). That test is extracted from the Declaratory Judgment Act's language that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such

---

[1] "Coercive" claims refer to those "seeking compensatory damages or injunctive relief." *Perelman v. Perelman*, 688 F. Supp. 2d 367, 372 (E.D. Pa. 2010).

judgment." *Id.*; 28 U.S.C. § 2202.  Thus, where the "essence" of a suit is best-characterized as one for declaratory relief, even though further ancillary action may be necessary, declining jurisdiction is still permissible.  *Id.* at 794-95.  However, that test appears to explicitly exempt injunctive actions from the category of coercive actions that can be abstained.  *Id.* at 795.

Similar to the Eighth Circuit's analysis, district courts without guidance–including ones within this Circuit–have followed yet another approach, the "heart of the action" analysis. *Perelman*, 688 F. Supp. 2d at 375.  There, a court will look to whether the nucleus of an action is declaratory or coercive, and will exercise jurisdiction over the whole if the core is coercive, and will exercise discretion as to both claims if it is declaratory.  To determine such "heart of the matter," these courts will consider whether the injunctive claim hinges on the declaratory ones.  *Id.* (citations omitted).

*Coltec Industries, Inc. v. Continental Insurance Company* selected the "heart of the action" analysis from the above menu of approaches in light of the Supreme Court's determination that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  Civ. Act. No. 04-5718, 2005 WL 1126951 at *3 (E.D. Pa. May 11, 2005) (citing *Wilton*, 515 U.S. at 288).  To hold otherwise, *Coltec* reasoned, would be to "elevate form over substance."  *Id.*  In particular, that Court reasoned that since the substantive claims could be mooted by the court's determination on the injunctive relief claims, it would be wise to stay the entire action in light of a pending state court action.  *Id.* Other courts within this Circuit, albeit in the face of pending state court proceedings, have also adopted this "heart of the action" approach.  *See e.g. ITT Indus. v. Pac. Emplrs. Ins. Co.*, 427 F. Supp. 2d 552, 557 (E.D. Pa. 2006) ("the considerations underlying the decisions

in *Colorado River* and *Wilton* regarding a district court's obligation to exercise jurisdiction over an action are better served by the fact-driven 'heart of the matter' approach than the application of a bright-line rule."); *General Nutrition Corp. v. Charter Oak Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 75775 at *4-5 (W.D. Pa. Oct. 10, 2007) (adopting the "heart of the action" analysis and declining jurisdiction where the coercive claim hinged on a declaratory judgment as to the terms of an insurance policy).

*Pereleman,* a case from the Eastern District of Pennsylvania, declined to adopt the "heart of the matter" approach. Finding it too flexible and not sufficiently deferential to *Colorado River*, that court adopted the analysis of the Seventh and Ninth Circuits, considering instead whether the claim for injunctive relief is alone sufficient to invoke subject matter jurisdiction. *Pereleman*, 688 F. Supp. 2d at 377. Such a test, *Perelman* held, "ensures that a court's 'virtually unflagging obligation' to hear such claims is not disregarded merely because they have been combined with an action for a declaratory judgment." *Id.*

However, *Columbia Gas* more recently rejected the approach taken in *Perelman* and adopted the "heart of the matter" approach. *Columbia Gas v. Am. Int'l Group*, Civ. Act. No. 10-1131, 2011 U.S. Dist. LEXIS 7919 (W.D. Pa. Jan. 27, 2011). In doing so, Judge Ambrose noted in pertinent part:

> I am persuaded that an approach that examines the crux of the litigation, and carefully considers the law surrounding a court's discretionary exercise of jurisdiction, best accommodates a balance between the various interests at stake. Of course, the Declaratory Judgment Act itself does not confer a federal court with jurisdiction; thus, every declaratory judgment action to which discretion attaches is likewise supported by an independent basis for federal jurisdiction. The Act itself, therefore, inherently contemplates that a court will have discretion whether to exercise jurisdiction over a dispute between parties of diverse citizenship, if the dispute is declaratory in nature. Given the administrative, jurisprudential, and other concerns expressed *supra*, it is fundamentally reasonable to pull a dependent coercive claim within the ambit

10

>of the discretion afforded its declaratory counterpart. "It would be the tail wagging the dog if the presence of a subordinate claim were sufficient to require a federal court to hear primary claims that it has determined are better resolved elsewhere."

*Id*. (quoting Franklin Commons East P'ship v. Abex Corp., 997 F. Supp. 585, 592 (D.N.J. 1998)).

For the same reasons, this Court is most compelled by the "heart of the action" analysis. Specifically, the Court believes it would be imprudent to adopt an approach that would mandate jurisdiction over a matter which, though effectively a request for declaratory judgment, is self-styled as injunctive relief. The logic in *Perelman* would eviscerate the discretionary nature of the Declaratory Judgment Act in allowing a declaratory claim to be combined with a legitimate, but otherwise superfluous claim for injunctive relief so long as diversity jurisdiction was triggered. Elevating such form over substance would effectively moot the discretion recommended in *Wilson* and *Summy*, a result which I cannot accept. Conversely, the "heart of the action" approach would simultaneously protect claims for injunctive relief that eclipse those declaratory relief claims, or are truly independent. Therefore, the Court will adopt the "heart of the matter" approach.

In the instant case, the Court finds that the injunctive relief sought indeed hinges from the requested declaratory relief. In its Complaint, Hartford requests that the Court: (1) void and rescind its agreement to arbitrate; (2) stay the arbitration until the Court can rule that the arbiters cannot make a determination on stacking; and (3) declare that John Stead executed a valid rejection policy stacking. Therefore, to the extent that Hartford seeks injunctive relief, such relief is wholly contingent on the Court's ultimate determination on the declaratory issues, namely whether stacking is allowable under this particular policy and/or whether

11

stacking can be discussed at the arbitration hearing.  Therefore, the Court finds that the "heart" of this issue is squarely an action for declaratory judgment, and as so, the Court will maintain its original determination to decline jurisdiction in this matter.

## **CONCLUSION**

Currently before the Court are fundamentally state law questions concerning insurance, arbitration, and stacking.  As this action is inherently one for declaratory judgment, coupled with a claim for injunctive relief to assist and implement any such declaratory judgment, the Court will exercise its discretion to decline jurisdiction and dismiss this matter as one more appropriate for state court.


| January 27, 2012 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |